UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LORI A. MARTIN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:13-cv-01990-SEB-TAB ) |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I. Introduction**

Plaintiff Lori A. Martin appeals Commissioner Carolyn W. Colvin's decision denying her Social Security disability insurance benefits and supplemental security income applications. She asserts four issues on appeal: (1) that substantial evidence does not support the ALJ's finding that Martin did not meet a listing if she stopped her alcohol and substance abuse; (2) that the ALJ erred in failing to summon a medical expert to consider whether Martin met or equaled a listing; (3) that the ALJ's credibility determination was patently erroneous; and (4) that the ALJ erroneously considered Martin's mental impairments in her step four determination. For the reasons set forth below, the undersigned recommends that Martin's brief in support of appeal be denied [Filing No. 23] and the Commissioner's decision affirmed.

**II. Background**

Martin alleges that her disability began December 1, 2005. In March and May 2007 Martin submitted Social Security disability applications for supplemental security income and

1

disability insurance benefits. Her applications were denied in an April 2010 hearing that the Appeals Council remanded. On February 14, 2012, Martin appeared and testified at another hearing before a different ALJ. At that hearing, Martin requested a supplemental hearing with a psychological expert. In her July 27, 2012, decision, the ALJ denied Martin's request for a supplemental hearing and also denied Martin's application for disability, finding her not to be disabled.

In her decision, the ALJ found that Martin satisfied step one because she had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found Martin had a laundry list of severe impairments: obesity; upper extremity neuropathy; bilateral wrists; degenerative disc disease of the cervical spine; spurring and radiculopathy with back and neck pain; carpal tunnel syndrome; degenerative joint disease; tendinopathy; and tendonitis of the right shoulder with a history of a rotator cuff tear; depression; anxiety; cocaine dependency; delusional disorder; persecutory type; borderline personality disorder; numbness/hypethesia of the hands; alcohol abuse; and peripheral distal neuropathy and calf pain in the left lower extremity. [Filing No. 14-2, at ECF p. 19.] The ALJ concluded that multiple other conditions alleged by Martin—fluid around her heart, human immunodeficiency virus (HIV), hepatitis B, herpes simplex virus infection, fibromyalgia, diabetes mellitus type II, acute bronchitis, possible Bartholin cyst, vaginal labia abscess, recurrent bacterial vaginosis, multiple contusions, hypodence solid nodules, migraines, chest pains, and panic attacks—were not severe impairments because the medical evidence failed to demonstrate any ongoing symptoms or work-related functional limitations. At step three, the ALJ found Martin's impairments did not meet or medically equal a listing, including her substance abuse disorders. The ALJ found at step four that if Martin stopped her substance abuse she would be have the capacity for:

> Sedentary work . . . except: lifting up to twenty pounds occasionally; lifting and carrying ten pounds frequently; standing for one hour at one time, walking for one hour at one time, and standing and walking, in combination, for a total of two hours during an eight hour workday; sitting for one hour at one time and a total of eight hours in an eight hour workday; no climbing ladders, ropes, scaffolds, or stairs; occasionally climbing ramps; frequently balancing; occasionally stopping, but never repetitively stopping below the waist; never crouching, kneeling, or crawling; only occasional rotation, flexion or extension of the neck, but never repetitive rotation, flexion, or extension of the neck; frequently reaching, including overhead reaching; avoid all exposure to extreme cold; avoid concentrate exposure to extreme heat, wetness, humidity, or irritants such as fumes, odors, dust, and gases; the work must allow the claimant to be off task 5% of the day, in addition to regularly schedule breaks; the work is limited to simple, routine, and repetitive tasks, in a work environment free of fast paced production requirements, involving only simple work-related decisions, with few, if any, work place changes; no interaction with the public; only occasional interaction with coworkers, with no tandem tasks; and the work must allow the claimant to be absent once per month, with absent defined as failing to appear for a schedule shift, being tardy for a scheduled shift or leaving early from a scheduled shift.[1]

[Filing No. 14-2, at ECF p. 27.] At step five, the ALJ relied on the testimony of a vocational expert who concluded that Martin would not be able to perform past relevant work, but that Martin could perform work in the national economy as a general office clerk. The VE determined that there would be 1,210 jobs in Indiana available based on the Dictionary of Occupational Titles. Subsequently, Martin requested review by the Appeals Council, which the Appeals Council denied. This appeal followed.

---

[1] The ALJ also created an RFC for Martin that included her substance abuse. The only difference between the RFC with limitations for substance abuse and the RFC that contains no limitations for substance abuse is the number of absences required. When accounting for her substance abuse, the ALJ opined Martin needed to be absent from work twice a month, whereas she only needed one absence a month when she was not limited by substance abuse. [Filing No. 14-2, at ECF p. 23.] When considering Martin's substance abuse as part of the RFC determination, the ALJ concluded that there would be no past relevant work and no jobs in the national economy available for Martin.

## III. Discussion

### A. Standard of review

Under 42 U.S.C. 405(g), the Commissioner's factual findings must be upheld if substantial evidence supports her findings. The Seventh Circuit defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

### B. Briefing

The Court is compelled to again note, as it has previously, the irony in Plaintiff's argument that the ALJ used boilerplate language where in fact Plaintiff's brief takes the same tact. Unfortunately for Plaintiff, it is not only ironic, it is entirely unhelpful to the Court. A review of Plaintiff's opening brief reveals large portions of boilerplate arguments. [Filing No. 23, at ECF p. 13-16, 20-23.] Likewise, pages one through two, most of page four, and all of page five of Plaintiff's nine-page reply brief [Filing No. 30] are nothing more than boilerplate. Any question about whether Plaintiff's counsel engages in significant "cut and paste" brief writing is put to rest by reviewing pages sixteen and nineteen of Plaintiff's opening brief. [Filing No. 23.] These pages are almost entirely blank. They coincide with the end of portions of

argument sections. To the undersigned, this unmistakenly reflects that Plaintiff cut the proceeding boilerplate from another brief or database, added a page break, and moved on to the next argument. The lack of any meaningful analysis of the facts and issues in this particular case at significant parts of Plaintiff's brief undermine counsel's effectiveness.

This is particularly notable as Martin suffers from a range of physical and mental impairments. As the previously set forth, Martin's list of severe impairments include, to name a few, spurring and radiculopathy with back and neck pain, tendinopathy, delusional disorder, and numbness/hypethesia of the hands. She also suffers from a number of non-severe impairments, which in combination could have a potentially debilitating impact on her ability to engage in meaningful employment. Yet, Plaintiff's appeal does not address any of the ALJ's physical impairment findings or the potential disabling effect of all the impairments in combination. As the Commissioner makes clear, Plaintiff's failure to raise any of these potential issues results in waiver. [Filing No. 28, at ECF p. 3 n.1.] Despite the long list of physical ailments, Plaintiff's appeal is limited to the mental impairments asserted in her opening brief.

*C. Listings 12.03 and 12.04*

Martin argues that the ALJ erroneously determined she did not meet or equal listings 12.03 or 12.04 because of her alcohol and substance abuse. Instead, Martin submits that the ALJ ignored evidence that Martin was totally disabled when she was not abusing substances. As evidence of her disability, Martin points to a September 16, 2008, psychotherapy session where she was diagnosed with major depression and cocaine dependence in sustained remission, and Dr. Wayne Hoye's psychological evaluation where he diagnosed her with depression NOS (not otherwise specified) and cocaine dependence in remission. [Filing No. 15-4, at ECF p. 69-71, Filing No. 15-5, at ECF p. 16.] Even during sustained remission, Martin received a GAF score

of 49, evidence she argues supports a finding of disability. Martin asserts the ALJ improperly played doctor in assessing whether Martin's mental impairments met or equaled the relevant listings.

In considering Martin's mental impairments without her substance abuse, the ALJ found that Martin would have mild to moderate difficulties in daily living, social functioning, concentration, persistence, or pace, and no episodes of decompensation. The ALJ supported her finding with substantial evidence. Contrary to Martin's allegations, the ALJ relied on the medical evidence in making this determination and did not erroneously rely on her layperson opinion. The ALJ relied on Martin's testimony in determining that Martin would have a mild restriction in activities of daily living without substance abuse. Martin testified at the most recent hearing that she helps her 10-year-old son get ready for school, and she is constantly at the school due to his behavioral problems. [Filing No. 14-2, at ECF p. 89.] She also has a 23-year-old son that spends most of his time at her home and, who at one point, was on house arrest at her home. [Filing No. 14-2, at ECF p. 89, Filing No. 14-6, at ECF p. 86, Filing No. 15-4, at ECF p. 70.] She attended approximately two men's basketball games and three or four women's basketball games in the last year for fun. [Filing No. 14-2, at ECF p. 90.] Martin enjoys playing pickup games of pool, but she testified that she has not played in over a year. [Filing No. 14-2, at ECF p. 91.] She leaves her home every day to attend meetings or go to the store, and can drive and use public transportation. [Filing No. 14-6, at ECF p. 15; Filing No. 14-6, at ECF p. 32.] She cares for her personal needs, cleans, cooks, attends dinner at her mother's home, and participates in support groups. [Filing No. 14-8, at ECF p. 66-67.] The ALJ also noted that Martin traveled in Mississippi in mid-2008 and traveled to an HIV retreat/conference in early 2010 that was out of town. [Filing No. 15-3, at ECF p. 39, Filing No. 15-5, at ECF p. 77.]

In terms of social functioning, the ALJ relied on medical evidence to conclude that Martin had moderate difficulties. Martin testified she had trouble getting along with others and feels as if people are talking about her. The ALJ acknowledged that a consultative examiner noted Martin was angry during the examination. However, treating mental health sources noted that Martin was polite [Filing No. 15-3, at ECF p. 5] or otherwise described as acting pleasant, cooperative, or appropriately. [Filing No. 15-4, at ECF p. 4; Filing No. 15-5, at ECF p. 23; Filing No. 15-6, at ECF p. 4-7.] Moreover, the ALJ noted that Martin previously denied difficulty getting along with friends, acquaintances, or relatives, and also denied problems with getting along with people at her last job. [Filing No. 14-6, at ECF p. 17.] Martin stated she gets along pretty well with others but prefers to work alone. The ALJ noted that Martin's case manager reported that she gets along with people and visits her family; attends church, meetings, and sporting events; goes shopping; goes to her son's school; uses public transportation; and drives. [Filing No. 14-6, at ECF p. 88-91.]

Likewise, the ALJ reviewed medical records in determining Martin's concentration, persistence, or pace for the purposes of meeting or equaling listings 12.03 or 12.04. The ALJ found that Martin would have moderate difficulties with concentration, persistence, or pace. A 2007 consultative examination revealed that Martin had remote memory, and impaired judgment and insight. Still, Martin had adequate thought process, immediate and recent memory, and abstract thinking. Her fund of information was adequate and she could answer simple mathematical questions. [Filing No. 14-8, at ECF p. 64-67.] The ALJ also considered a more recent consultative examination where Martin was unable to perform serial 7s, but she quickly worked through cognitive tasks with adequate verbal learning, memory, fund of information and reasoning. [Filing No. 15-4, at ECF p. 70.] The ALJ also considered notes from Martin's case

manager, who opined that Martin had good concentration, an intact short-term memory, and average intelligence. [Filing No. 14-2, at ECF p. 23, 50, 52, 55, 59.] Overall, the ALJ provided substantial evidence to support her finding that Martin did not medically met or equal listings 12.03 or 12.04 for her mental impairment.

Martin asserts that ALJ failed to discuss her GAF scores of 48 and 49, which was in error. However, Martin is mistaken. The Commissioner points out that the ALJ discussed Martin's GAF scores, which ranged from 49-60. Without question, the ALJ discussed Dr. Smith's 2007 consultative examination, during which he gave Martin a GAF score of 49. The ALJ also discussed Martin's score of 60, which was part of Dr. Hoye's 2010 consultative assessment. Martin failed to address this oversight on reply. Likewise, Martin fails to acknowledge that an ALJ is not required to rely on GAF scores in making a disability decision. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Instead, an ALJ may rely on the narrative of the underlying evidence to support her findings. Here, the ALJ considered not only Martin's GAF scores, but also the narrative of the underlying evidence, particularly the examination findings and diagnoses of Dr. Smith and Dr. Hoye. The ALJ discussed substantial evidence that supported her mental impairment finding. Thus, the Magistrate Judge finds that the ALJ's conclusion that Martin did not meet or equal listings 12.03 or 12.04 was not in error.

   D. *Summoning a medical advisor*

Martin's next challenges the ALJ's decision not to summon a medical advisor to determine whether she met or equaled listings 12.03 or 12.04. Martin asserts the ALJ improperly relied on state agency reviewers to make this determination, even though these examiners did not consider the entire medical record. Specifically, the state agency reviewers did not review the

8

June 18, 2011, Midtown Mental Health Clinic psychological evaluation. Martin alleges these reviewers would have found her disabled if they had reviewed this evaluation.

The Court defers to an ALJ's decision as to whether to summon a medical advisor and will overturn the ALJ's decision only if the ALJ lacked sufficient information to adequately develop the record. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). Here, the Magistrate Judge finds no such error. The ALJ expressly denied a supplemental hearing with a psychological expert, stating that the use of a psychological expert in Martin's case was not required or necessary as there was sufficient evidence upon which to make a decision. [Filing No. 14-2, at ECF p. 16.]

Martin focuses her argument on the state reviewer's failure to consider the June 18, 2011, psychological evaluation; however, the ALJ discussed this evaluation in her opinion. [Filing No. 14-2, at ECF p. 32.] She indicated that Martin returned to a mental health provider in June 18, 2011, but there was no evidence that Martin followed through with intake assessment or restarted treatment. [Filing No. 15-6, at ECF p. 45.] The ALJ went on to discuss even more recent treatment of Martin where she admitted to past psychiatric abnormalities, but she asserted that she was doing better now. [Filing No. 15-7, at ECF p. 15.] More important, the June 18 mental assessment did not provide additional medical evidence that would change the state agency reviewer's findings on equivalency to the listing impairment so as to require a medical expert. Social Security Ruling 96-6p, 1996 WL 374180. The June 18, 2011, report discussed Martin's history of sexual abuse, her delusions, and her suicide attempts. These same concerns were reported in her 2007 consultative examination, which was accessible to the state agency reviewers. [Filing No. 14-8, at ECF p. 61-67.] Thus, no additional information warranted the

summoning of the medical advisor, and the Magistrate Judge finds it appropriate to defer to the ALJ's judgment.

   *E. Credibility determination*

Martin next argues that the ALJ's credibility determination was patently erroneous. She asserts that the ALJ's determination was illogical, used boilerplate language, included no evidentiary support, and was intentionally vague and backwards. The ALJ's credibility decision, however, was not patently wrong so as to warrant remand.

Although the ALJ's credibility determination included boilerplate language, the Seventh Circuit and this Court have consistently held that an ALJ's boilerplate language is not erroneous if the ALJ also adequately explains her findings. *Castile v. Astrue*, 617 F.3d 923, 929-30 (7th Cir. 2010); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). To be sure, the ALJ adequately explained her credibility determination. Pursuant to the factors set forth in Social Security 96-7p, the ALJ considered Martin's daily living activities, noting (among other things) that Martin was capable of driving, cooking, shopping, using public transportation, traveling, attending meetings, cleaning, doing laundry, and caring for her personal needs and those of her ten-year-old son. [Filing No. 14-2, at ECF p. 29; Filing No. 14-6, at ECF p. 15; Filing No. 14-8, at ECF p. 66; Filing No. 15-3, at ECF p. 39; Filing No. 15-5, at ECF p. 77.] The ALJ also considered the location, duration, frequency, and intensity of Martin's pain, concluding that clinical findings failed to show that her obesity "limited her ability to work at least the most range of sedentary work." [Filing No. 14-2, at ECF p. 29.]

The ALJ further considered objective medical evidence of Martin's physical impairments. Overall, the ALJ concluded that Martin's sparse and sporadic treatment history and her treating source's reports failed to fully support her allegations. Indeed, there was no

10

indication of gait abnormality, neurological deficits, no significant ongoing neck or shoulder symptoms, and evidence showed Martin had full range of motion, normal strength, and normal sensation on examination. [Filing No. 14-2, at ECF p. 31; Filing No. 15-4 at ECF p. 27-28, 30-31; Filing No. 15-6, at ECF p. 43; Filing No. 15-7, at ECF p. 16.] The ALJ also considered Martin's mental impairments, finding that medical evidence failed to fully support her allegations. Martin denied hallucinations on examination and appeared to be primarily irritated with her son. [Filing No. 15-3, at ECF p. 5-6; Filing No. 15-3, at ECF p. 10; Filing No. 15-7, at ECF p. 15.] Moreover, examiners found Martin to be polite, with adequate thought content, thought process, insight, and judgment. Her concentration was good, her short-term memory intact, and her intelligence average. [Filing No. 14-2, at ECF p. 32; Filing No. 15-3, at ECF p. 5; Filing No. 15-5, at ECF p. 115, 123; Filing No. 15-6, at ECF p. 4.]

The ALJ further considered third-party statements from her case managers at Bethlehem House, her resource counselor at Gallahue Mental Health Center, and her friend. The ALJ found that the case managers reported information that was inconsistent with Martin's treating physician's findings and discussed physical and mental impairments despite the fact that they did not treat physical or mental impairments. [Filing No. 14-6, at ECF p. 85-92; Filing No. 14-6, at ECF p. 122-129.] Moreover, the case managers relied on Martin's own reports of physical and mental impairments. The ALJ gave Martin's friend's third-party statement some weight as her report of Martin's daily living activities were consistent with the medical evidence and other sources. Her friend indicated that she could drive, use public transportation, go shopping, listen to gospel music, visit the waterpark, and go to church. [Filing No. 14-6, at ECF p. 32.]

Aside from considering Martin's daily living activities, objective medical evidence, and third-party statements, the ALJ also discussed Martin's medication history, including type,

dosage, effectiveness, and side effects, as well as the relevant medical source statements. The ALJ more than adequately explained her reasoning for finding Martin to be not credible and she provided substantial evidence to support her credibility determination. Thus, the Magistrate Judge finds that remand is not appropriate on this issue.

    *F. Ability to perform national economy jobs*

Martin's final argument concerns the ALJ's step four and five determination. She contends that the ALJ inadequately accounted for Martin's mental capabilities, limiting her only to simple, routine, and repetitive tasks. According to Martin, this limitation does not address the impact of her mental limitations, especially because the ALJ did not consider Martin's GAF scores. The Court reiterates that an ALJ is not required to discuss GAF scores and failing to do so is not erroneous if the ALJ relies on the underlying narrative instead. Here, the ALJ did just that. [*See* Filing No. 14-2, at ECF p. 32-33.] Thus, the Court should not remand this case because the RFC determination and hypothetical questions at step four and five did not contemplate these two GAF scores.

Moreover, the ALJ's analysis of Martin's mental impairments did not stop with a conclusion that Martin was merely capable of performing simple, routine, and repetitive tasks. The ALJ limited Martin to simple, routine, and repetitive tasks where Martin could be off task 5 percent of the day, in addition to regularly scheduled breaks, and would work in an environment free of fast-paced production requirements. Likewise, the ALJ found that Martin was capable of working in an environment with only simple work-related decisions, with few, if any, work place changes, no interaction with the public, occasional interaction with coworkers, and no tandem tasks. [Filing No. 14-2, at ECF p. 28.] Contrary to Martin's argument, the ALJ accounted for Martin's moderate limitations in social functioning in her RFC determination. She limited

12

Martin to no interaction with the public and no more than occasional interaction with co-workers and no tandem tasks. To support this limitation, the ALJ relied on Martin's mental health treatment [Filing No. 15-3, at ECF p. 5-6; Filing No. 15-3, at ECF p. 11; Filing No. 15-5, at ECF p. 23; Filing No. 15-5, at ECF p. 104-123]; her consultative psychological examinations from 2007 to 2011 [Filing No. 14-8, at ECF p. 61-63; Filing No. 15-4, at ECF p. 70-71; Filing No. 15-6, at ECF p. 45-46]; Martin's prior reports; and Martin's daily living activities [Filing No. 14-6, at ECF p. 14-19; Filing No. 14-6, at ECF p. 93-100]. [Filing No. 14-2, at ECF p. 32-33.]

The ALJ also accounted for Martin's moderate difficulties in concentration, persistence, or pace, by limiting her to simple routine, repetitive tasks free from a fast-pace production work environment with few, if any, work place changes and only simple work-related decisions. She also provided that Martin needed to be able to be off task for at least 5 percent of the workday in addition to regularly scheduled breaks. To support these limitations, the ALJ relied on evidence that Martin's concentration was good, her short-term memory intact, her intelligence average, and her thought process, immediate memory, recent memory, and abstract thinking was adequate. Still, the ALJ acknowledged that Martin's remote memory, judgment, and insight appeared impaired. [Filing No. 14-8, at ECF p. 61-63; Filing No. 15-3, at ECF p. 11; Filing No. 15-5, at ECF p. 23, 50, 52.] The ALJ noted that Martin's medical records did not support limitations for paranoia, hallucinations, delusions, and ideas of reference, particularly because Martin denied hallucinations in the record, and she had indicated in 2012 that her previously reported history of psychiatric abnormalities was better. [Filing No. 14-2, at ECF p. 32; Filing No. 15-3, at ECF p. 30; Filing No. 15-7, at ECF p. 15.]

The ALJ's RFC determination and hypothetical questioning accommodated Martin's mental limitations. The ALJ supported her RFC finding with substantial evidence and her

13

hypothetical questions appropriately incorporated Martin's limitations. Thus, the Magistrate Judge concludes there was no error.

## IV. Recommendation

The Magistrate Judge recommends that Martin's brief in support of appeal [Filing No. 23] be denied and that the Commissioner's finding of no disability be affirmed. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 12/29/2014

_____
Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution to all counsel of record via CM/ECF.